# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
September 17, 2013 Session

## STATE OF TENNESSEE v. ROY L. McALISTER

**Appeal from the Circuit Court for Robertson County**
**No. 2011CR310    John H. Gasaway III, Judge**

---

**No. M2013-00581-CCA-R3-CD   Filed November 7, 2013**

---

Roy L. McAlister ("the Defendant") pleaded guilty to three counts of aggravated statutory rape and one count of sexual exploitation of a minor. Pursuant to a plea agreement, the Defendant was given an effective sentence of three years, suspended to supervised probation after service of 219 days in confinement. Upon the filing of a probation violation warrant, the Defendant was taken into custody, and a probation violation hearing was held. At the conclusion of the hearing, the trial court revoked the Defendant's probation and ordered him to serve the remainder of his sentence in confinement. In his original appeal of the trial court's ruling, we vacated the trial court's judgment and remanded the case for the trial court to clarify its findings. Subsequently, the trial court issued an order clarifying its findings and affirming its previous order revoking the Defendant's probation. The Defendant again appealed the trial court's ruling. Upon our thorough review of the record and applicable law, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment
### of the Circuit Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ALAN E. GLENN, JJ., joined.

H. Garth Click (on appeal), Springfield, Tennessee; and Anne Kroeger (at hearing), Assistant Public Defender, Springfield, Tennessee, for the appellant, Roy L. McAlister.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

In the Defendant's first appeal of the trial court's revocation of probation, this Court held that, "[b]ecause the trial court's findings are ambiguous, we are unable to determine whether the trial court properly revoked the Defendant's probation." State v. Roy L. McAlister, No. M2012-01239-CCA-R3-CD, 2013 WL 500795, at *5 (Tenn. Crim. App. Feb. 11, 2013). To assist in the resolution of this proceeding, we repeat here the summary of the facts set forth in this Court's opinion in that case:

> On September 16, 2011, the Defendant pleaded guilty to three counts of aggravated statutory rape and one count of sexual exploitation of a minor. In accordance with the terms of the plea agreement, the trial court sentenced the Defendant as a Range I, standard offender to three years on each aggravated statutory rape conviction and to two years on the sexual exploitation conviction, to be served concurrently, for an effective sentence of three years. The trial court ordered the Defendant's sentence to be suspended to supervised probation after service of 219 days in the Robertson County Detention Center.

> In January 2012, a probation violation warrant was filed. The trial court conducted a hearing on March 23, 2012. At the end of the hearing, the trial court revoked the Defendant's probation, sentenced him "to time served[,] and reinstated [probation] on the original terms." Shortly thereafter, on March 30, 2012, a second probation violation warrant was filed, which is the subject of this appeal, alleging the following violations:

> > Rule 1: I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances.

> > Violation: [Tennessee Code Annotated section] 40–39–211(a), offender established a residence within 1000 feet of Madison Academy.

> > Rule 5: I will inform my Probation Officer before changing my residence or employment. I will get permission from my Probation Officer before leaving my county of residence or the state.

Violation: On or about March 27, 2012, this offender moved from Robertson County to Davidson County without permission.

The trial court held a hearing on these alleged violations on May 4, 2012. Sebrina Seaborne, a probation officer with the Board of Probation and Parole, testified that her job responsibilities included monitoring enhanced offenders and sexual offenders. She supervised the Defendant while he was released on probation in this case.

Seaborne testified that she also was involved in the Defendant's first probation violation hearing. She agreed that the first violation arose out of the Defendant's residing at an apartment on Cheyenne Boulevard in Davidson County, where the Defendant's wife lived. Seaborne testified that she previously visited that apartment and determined that it was located within 1,000 feet of property owned by a school, Madison Academy. Seaborne testified that residing at that apartment is against the sex offender rules and conditions that apply to the Defendant. Seaborne also testified that, in the rules and conditions that the Defendant signed, he was required to get her permission before moving from Robertson County to another county.

Seaborne testified that the Defendant was released from jail on March 23, 2012, after his first violation of probation hearing. The Defendant met with Seaborne on March 27, 2012, to discuss where the Defendant was living and to initiate a GPS tracking device. On March 27th, the Defendant told Seaborne that he was "back at his home; in the apartments on Cheyenne Boulevard." Seaborne told the Defendant that living there was a violation of his probation and that he already had been violated for living there. According to her, the Defendant responded that "the Judge didn't tell me I couldn't go back there, and I don't know why it's any of your concern where I live." Seaborne responded, "[I]t is my concern; the Judge did find you guilty of violating for living there[.]" Seaborne then asked the Defendant to sign an agreement that he knew he could not use the Cheyenne Boulevard address as his primary or secondary address. The Defendant did sign this agreement, and it was entered as an exhibit at the hearing. She again reiterated to the Defendant that he did not have permission to live at the apartment on Cheyenne Boulevard, and she further instructed him not to return there.

At the meeting on March 27th, Seaborne also placed a GPS tracking device on the Defendant. When the Defendant left this meeting, Seaborne

believed that the Defendant was going to go back to the Cheyenne Boulevard residence. She stated, "His argument was that I really couldn't tell him he couldn't live there. So no matter how many times I had insisted I could tell him where to live, my understanding when he left was he was . . . just going to ignore my instruction."

Seaborne testified that the following three days, March 28–30, 2012, she checked the GPS system to determine the Defendant's whereabouts. On each of these days, the "tracking maps" generated by the GPS system, which were entered as exhibits, showed that the Defendant was at the apartment complex on Cheyenne Boulevard. According to the tracking map for March 28th, the Defendant was at the apartment complex on Cheyenne Boulevard from 09:03:35 until 13:02:26 (9:03 a.m. until 1:02 p.m.). The tracking map for March 29th indicated that the Defendant was at the apartment complex on Cheyenne Boulevard from 09:03:50 until 13:02:22 (9:03 a.m. until 1:02 p.m.). The tracking map for March 30th indicated that the Defendant was at the apartment complex on Cheyenne Boulevard from 11:40:40 until 15:39:24 (11:40 a.m. until 3:39 p.m.). On March 30th, Seaborne filed a second probation violation warrant.

On cross-examination, Seaborne agreed that the document the Defendant signed prohibiting him from establishing a primary or secondary residence at the apartment on Cheyenne Boulevard did not prohibit him from visiting that apartment. Seaborne stated that she would define "a visit" as "less than 24 hours." She agreed that she was basing her position that he was establishing a residence at the apartment on Cheyenne Boulevard on "the duration of time [the Defendant] was there and the number of days he was there." Seaborne then added that "on the TBI instructions it says that he cannot maintain a presence there. Which doesn't give you – it doesn't give you a time frame, but it says that he cannot maintain a presence." She stated that "maintain[ing] any kind of presence within a thousand feet[] – is – illegal" and that "it is a violation." According to her, she also explained this fact to the Defendant. However, the "TBI instructions" were not referenced in the probation violation warrant.

The Defendant testified that on March 23, 2012, at approximately 1:30 a.m., when he was released from jail after his first probation violation hearing, he went to the apartment on Cheyenne Boulevard with his wife. He added, "[W]e knew that I couldn't live there, but there was nothing saying that I couldn't go back over there." The Defendant also stated, "I talked to the

-4-

Madison Police Department down there, . . . and told them I would be in their area[.]" He asked the officers when he could "go check in with [his] wife and [his] stepdaughter and it's like they told [him] as long as there was no school in progress, after hours, they didn't have a problem with [him] being over there." Thus, the Defendant testified, "I would stay gone up until 5:30 when the last bus . . . for Madison ran from downtown Nashville. And I'd go over there, and I'd stay, and then I would leave at 5:00 in the morning before school hours opened."

The Defendant further testified that he informed Seaborne about this schedule. He claimed,

[S]he told me I couldn't even go over there, that I was in violation at that point; and I told her I know I can't live there; she said you can't even be over there. And I was like nobody told me I couldn't go over there[.][T]hey just said I couldn't live there. And she said no, you were well instructed that you can't be there. I was like – well, we had the little disagreement there. And I told her, I was like I'm going to go over there and see my wife; I don't see why I can't do that; I understand I can't live there.

So she put the ankle monitor on and told me if I went back on the property then I would be immediately in violation; that she [sic] was already in violation for being over there to start with. And I informed her well, if I'm in violation then I'm going to spend as much time as I can with what I've got, because I've done lost everything in this world over this charge. And she said well, you do what you're going to do, because I – and I understand her situation, but that's the reason why I went back over there.

Defense counsel then asked, "[T]hat would explain March 29th and March 30th as well; is that right?" The Defendant responded,

Yes. Because I figured I was already in violation. And if you look on that GPS I didn't move from that address; I didn't go w[a]ndering around. And she wants you to be in by 9:00 at night. I was already listed as homeless, where could I – I mean, you got to be in; where am I supposed to be in at?

-5-

On cross-examination by the State, the Defendant admitted that on March 27, 2012, Seaborne told him that he "[c]ouldn't even step foot on the premises." He also agreed that he signed a paper stating he could not establish a primary or secondary residence there. He further agreed that he went and "stayed . . . that night the 28th, 29th, 30th and so forth until [his] warrant was served."[1] The State then asked, "[A]nd [you] stayed there the entire time . . . opposite of what you signed and what her instruction was, correct?" The Defendant responded, "Yes."

At the conclusion of the hearing, the trial court found by a preponderance of the evidence that the Defendant had violated the terms and conditions of his probation "by *maintaining a presence* at the Cheyenne Boulevard residence in Davidson County" (emphasis added) and that "[h]is presence there was something that he did in the face of a direct instruction not to do so." The trial court also stated, "Given his insistence that he's not going to do what he's required to do on a release status there's no reasonable expectation that he will obey any future instructions." Accordingly, the trial court revoked the Defendant's probation and ordered that he serve the remainder of his three-year sentence in the Tennessee Department of Correction.

Thereafter, the trial court issued a written order reflecting its findings. In the written order, the trial court listed the following grounds as its basis for revoking the Defendant's probation:

> [T]he court found beyond a preponderance of the evidence that the [D]efendant violated the terms and conditions of his probation due to *establishing a presence* at a residence within 1,000.00 [sic] feet of a school's property after being directly told not to by his probation officer. [emphasis added].

Id. at *1-4.

On appeal, this Court determined that the "establishing a presence" and "maintaining a presence" language used by the trial court as the basis for revoking the Defendant's probation, "based on the testimony of Seaborne, appears to be from the 'TBI instructions' purportedly applicable to the Defendant." Id. at *5. However, this Court held that "the 'TBI instructions' are not listed as a ground for revocation in the warrant and do not appear

---

[1] According to the warrant, it was served April 12, 2012.

anywhere in the record. Under these circumstances, the 'TBI instructions' cannot be the basis of the revocation." Id. Therefore, this Court concluded that it was unable to resolve on what grounds the trial court intended to revoke the Defendant's probation and held that "[b]ecause the trial court's findings are ambiguous, we are unable to determine whether the trial court properly revoked the Defendant's probation based on the grounds alleged in the warrant." Id. Consequently, this Court vacated the trial court's judgment and remanded the case for the trial court to clarify its findings regarding the basis of the revocation.

On remand, the trial court issued a new order in which it affirmed its previous decision revoking the Defendant's probation and found "beyond a preponderance of the evidence that the defendant established a primary residence within 1,000 feet of a school, to wit: Madison Academy." Therefore, the trial court concluded that "the defendant violated the terms and conditions of his probation by establishing a primary residence within 1,000 feet of a school in violation of his probation and in violation of [Tennessee Code Annotated section] 40-39-211."

The Defendant appealed, arguing that: (1) the trial court abused its discretion in finding a violation when the evidence presented at the hearing failed to show by a preponderance of the evidence that the Defendant established a primary residence within 1,000 feet of a school; and (2) the trial court abused its discretion in ordering the Defendant to serve his sentence in confinement rather than reinstating his probation.

## **Analysis**

Probation revocations are "not a stage of a criminal prosecution," and, thus, the standard of proof and rights due to a defendant in a criminal prosecution do not apply. Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); see also State v. Wade, 863 S.W.2d 406, 407-08 (Tenn. 1993) (the "full panoply of rights due a defendant in criminal prosecutions do not apply" in revocation proceedings). Tennessee Code Annotated section 40-35-311(e)(1) (Supp. 2011) provides the burden of proof for probation revocation proceedings:

> If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence and:
>
> (A) Cause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with § 40-35-310; or

(B) Resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of [title 40]; provided that the violation of probation and suspension is a technical one and does not involve the commission of a new offense.

See also State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Thus, the State need only prove that the defendant violated the terms of his probation by a preponderance of the evidence.

The decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). On appeal, this Court will not disturb a trial court's probation revocation decision absent an abuse of discretion. State v. Shaffer, 45 S.W.3d 553, 554-55 (Tenn. 2001); Farrar, 355 S.W.3d at 585. An abuse of discretion occurs when a trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

In the instant case, the Defendant argues that the evidence submitted at the hearing did not show by a preponderance of the evidence that the Defendant established a primary residence at the Cheyenne Boulevard apartment. Tennessee Code Annotated section 40-39-211(a) (Supp. 2011) mandates that, as a condition of his probation, the Defendant shall not "knowingly establish a primary or secondary residence or any other living accommodation . . . within one thousand feet (1,000 [feet]) of the property line of any public school, private or parochial school." A primary residence is defined as "a place where the person abides, lodges, resides or establishes any other living accommodations in this state for five (5) consecutive days." Tenn. Code Ann. § 40-39-202(12) (Supp. 2011).

According to Seaborne's testimony at the hearing, when she met with the Defendant on March 27, 2012, he told her that he had been living at the Cheyenne Boulevard apartment since he was released from jail the morning of March 23, 2012.[2] The Defendant admitted at the hearing that he stayed at the Cheyenne Boulevard apartment during this period from approximately 5:30 p.m. each evening until 5:00 a.m. the following morning. Following the March 27 meeting, Seaborne testified that she used a GPS device to monitor the Defendant from March 28-30. The GPS results, admitted at the hearing without objection, showed that the Defendant was at the Cheyenne Boulevard apartment each of those three days. On cross-

---

[2] The record before us does not demonstrate at what point in time the Defendant originally established his residence at the Cheyenne Boulevard apartment.

examination by the State, the Defendant testified that he continued to stay nights at the apartment following his March 27 meeting with Seaborne, and stayed there every night up until the warrant was served on April 12.

This evidence was sufficient to show by a preponderance of the evidence that the Defendant "abid[ed], lodg[ed], resid[ed], or establish[ed] any other living accommodation" at the Cheyenne Boulevard apartment at least five consecutive days. Tenn. Code Ann. § 40-39-202(12). Therefore, we hold that the trial court did not abuse its discretion in finding that the Defendant established a primary residence at the Cheyenne Boulevard apartment in violation of the terms and conditions of his probation. The Defendant is entitled to no relief on this basis.

The Defendant further asserts that the evidence at the sentencing hearing was not sufficient to support a finding by a preponderance of the evidence that the Cheyenne Boulevard apartment was within 1,000 feet of a school. The Defendant argues that "there was no evidence provided that the property itself was the property line of a public school, private, or parochial school," and asserts that "[t]he probation officer in the hearing expressly stated that the physical school was located in a different location from the property line that was within a thousand feet of the Cheyenne apartment." Seaborne, in fact, testified as follows without objection at the hearing:

Q: . . . you have gone out to the residence and determined it's within a thousand feet of a school.

A: The property's owned by a school. Not the physical school itself, but yes sir.

Q: And have you determined through G-P-S and through your own visual sight that that's within a thousand feet of the property line of the school?

A: Yes, sir.

Q: And I believe – this is a apartment complex; is that correct?

A: Yes, sir, it is.

Q: And from the apartment complex can you see the boundary line of the school?

A: Yes, sir, you can.

Q: How close is it?

A: Across the street.

Q: Clearly within a thousand feet?

A: Yes, sir.

The terms of the Defendant's probation prohibited him from establishing a residence "within one thousand feet (1,000 [feet]) *of the property line* of any public school, private or parochial school." Tenn. Code Ann. § 40-39-211(a) (emphasis added). Seaborne's testimony clearly established that, while the Cheyenne Boulevard apartment was not within 1,000 feet of the physical school itself, it was within 1,000 feet of the property line of the school. Therefore, this evidence was sufficient to show by a preponderance of the evidence that the Cheyenne Boulevard apartment was within 1,000 feet of the property line of a school within the meaning of the statute.[3] Accordingly, we hold that the trial court did not abuse its discretion in finding that the Cheyenne Boulevard apartment was within 1,000 feet of the property line of a school, in violation of the terms and conditions of the Defendant's probation. Thus, the Defendant is entitled to no relief on this basis.

Finally, the Defendant asserts that the trial court "abused its discretion in ordering the Defendant to serve the remainder of his sentence in confinement when Tennessee Code Annotated § 40-35-311 allowed resentencing to an alternative to incarceration when the basis for the revocation is a technical violation." Tennessee Code Annotated section 40-35-311(e)(1)(B) states that upon finding a probation violation by a preponderance of the evidence the trial judge may resentence the defendant to a community-based alternative to incarceration "provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense." Although the Defendant is correct that the statute permitted resentencing to a community-based alternative in the instant case, nothing in the statute *required* it. Rather, "if a trial court determines that a defendant has violated the conditions of probation, it has the authority to revoke the defendant's probation and cause execution of the original judgment." State v. Hunter, 1 S.W.3d 643, 646 (Tenn. 1999). Based upon our review of the record, we hold that the trial court did not abuse its discretion in ordering the Defendant to serve the remainder of his sentence in confinement. Accordingly, the Defendant is entitled to no relief on this basis.

---

[3] We reject the Defendant's argument that the statute should be interpreted to apply only when the residence is within 1,000 feet of the physical school itself. Clearly, such an interpretation is directly contrary to the express terms of the statute. See Tenn. Code Ann. § 40-39-211(a).

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the trial court.


_____

JEFFREY S. BIVINS, JUDGE